## McLallen *et al. v.* Jones *et al.*

Markham, the owner of a farm subject to a mortgage for $3,800, presently due to one McLallen, agreed to exchange it for a tavern owned by William Jones, upon these terms: Markham to convey the farm to Jones, and to receive Jones' bond for $3,000 payable on time, secured by mortgage of the farm; Jones to convey the tavern to Markham, and to receive from him a bond for $1,000, payable on time, secured by mortgage of the tavern: these two mortgages to be assigned to and received by McLallen, who was a party and agreed to the entire arrangement, in satisfaction of the $3,800, when he should be convinced that the farm would thereupon be incumbered only by the $3,000, mortgage. The contract was carried into execution by the exchange of conveyances and of possession, the making and recording of the mortgages for $1,000 and $3,000, and in all respects except their actual substitution for the $3,800 mortgage, which was deferred for the purpose of producing evidence of the fact, (which actually existed), that the farm was not otherwise incumbered. The parties did not regard time as essential, and the bonds and mortgages, with proper assignments of them, signed and acknowledged, were left with Jones to be handed over to McLallen, together with a certificate as to incumbrances on the farm, which he was to procure: *Held*, that Jones, upon showing the farm free from incumbrance and assigning the two mortgages, was entitled to have his property discharged from the lien of the $3,800 by a specific performance of the contract on the part of McLallen.

This right passed to and could be enforced by one to whom Jones executed a subsequent mortgage of the farm. The latter has the same rights as a grantee by absolute deed. Jones having absconded and his creditors having attached the $3,000 mortgage, delivered to him for the purpose aforesaid, the attaching creditor took only subject to the equities of Jones' mortgagee and the other parties interested in a specific performance.

Whether the title of a purchaser of the mortgage in good faith and for valuable consideration would be subject to such equities, *Quere*, per Comstock, J.

The original action was commenced for the purpose of fore-closing a mortgage of $3,800, executed by one John C. Markham to the plaintiffs, covering certain real estate in Tompkins county, called the "Washington House property." In the complaint it was alleged that William Jones, Jr., David Jones,

Lyman Strobridge, John K. Archer, William C. Halsey and Isaac Jeffers had or claimed to have some interest in the premises subject to the mortgage, and they, together with Markham, the mortgagor, were the defendants in that suit. David Jones answered the complaint, and also instituted the cross-suit against his co-defendants and against the plaintiffs in the first suit. In his answer and in his cross-complaint he set forth a subsequent mortgage on the same premises, given to himself by the defendant, William Jones, Jr., to secure the sum of $1,400; and he claimed that the said mortgage of $3,800 was either paid and satisfied, or else that a certain agreement which, among other things, provided for the satisfaction of that mortgage, should be specifically enforced. The cross-complaint was answered by the plaintiffs in the original suit and by some of the other defendants, but not by the defendants Markham or William Jones, Jr. The two actions were referred to John M. Parker, Esq., as sole referee, and were tried together before him. The referee determined the controversy in favor of the original plaintiffs, and upon his report the usual judgment for foreclosure of the mortgage of $3,800 and for a sale of the premises was entered. That judgment was affirmed on appeal to the Supreme Court, and David Jones appealed to this court. The facts of the case are stated in the opinion of Judge COM-STOCK. The cause was submitted on printed points.

*Alfred Wells*, for the appellant.

*Smith & Barto*, for the respondents.

COMSTOCK, J. It appears that, before the 29th of August, 1853, Markham owned certain real estate, designated as the "Washington House," subject to a mortgage of $3,800, which he had given to the Messrs. McLallen, the plaintiffs in the foreclosure suit. William Jones, Jr., at the same time owned a farm in Hector. On the day mentioned, it was agreed between those persons that Jones should convey to Markham the Hector farm, subject to a prior outstanding mortgage thereon of

$1,000, and that Markham should execute back to Jones a bond and mortgage on the same farm for $3,000; that Markham should at the same time convey to Jones the Washington House, and that Jones should give back to Markham a bond and mortgage of $1,000 on that property. It was, at the same time, agreed between Jones, Markham and the McLallens, that the bonds and mortgages so to be given, of $3,000 and $1,000, should be assigned to the latter, who agreed on their part to receive the same in satisfaction of the said mortgage of $3,800, whenever they were satisfied, by a search for that purpose to be made, that there were no liens on the Hector farm except the mortgage of $3,000 so to be given and the said outstanding one of $1,000. If the amount due on their mortgage of $3,800 should, on computation, be found more than $4,000, then Markham was to pay to them that excess; if less than $4,000, they were to pay to him the difference. The referee has stated in his report, as a conclusion of fact, that the agreement to convey the lands respectively between Jones and Markham was predicated on the agreement of the plaintiffs with them to accept the new securities, and that all the stipulations which have been mentioned formed one contract. If the contract had been carried into complete execution, the mortgage, now in question, of $3,800 would have been satisfied and discharged, and the plaintiffs would hold as substituted securities the new mortgages of Markham for $3,000 on the Hector farm and of Jones for $1,000 on the Washington House.

The agreement was carried into execution in all respects, except the substitution of the new securities for the mortgage of $3,800. Jones conveyed the Hector farm and Markham the Washington House. Each of them executed their bond and mortgage according to the contract, and each took possession of the estate conveyed to him. In regard to the intended substitution of securities, the referee found that the preëxisting mortgage for $3,800 was not in fact given up or canceled, nor were the new securities of $3,000 and $1,000 delivered to the McLallens with intent to pass to them the title. It appears that those mortgages were recorded; that the proper assignments **of**

them were drawn, signed and acknowledged, and that they were in fact handed over to the McLallens, but without any search showing that the Hector farm was clear of incumbrances except those mentioned in the agreement, although such was the fact. At that time the McLallens had not computed the amount; and, in short, the parties do not appear to have been fully ready on either side to make the substitution according to the agreement. The new securities and assignments were accordingly handed back, and were left in the hands of William Jones, Jr., with an understanding that he should procure the proper search to be made, and that the McLallens should in the meantime ascertain precisely what was due to them on the mortgage of $3,800. When the securities were handed back and left with Jones, the McLallens, or one of them, said that the papers might be exchanged "almost any day."

The situation of the parties at this point of time is material to be considered. It is quite clear that no actual satisfaction of the mortgage in question resulted from these transactions, for the reason that the mortgagees did not receive and hold as their own the two bonds and mortgages which were to be substituted. In the argument for the appellant it has been insisted that the evidence makes out an absolute delivery of these securities to the McLallens, and it is claimed that their previous mortgage was thereby satisfied. But the referee has found the fact otherwise, and we presume correctly. At all events, we are to take the conclusion as he found it, and it follows that the mortgage in question was never legally satisfied.

It is quite another question, however, whether Jones and Markham—or, putting the inquiry with more particular reference to the present case, whether Jones—was not entitled to a specific performance of the agreement for the satisfaction of this mortgage. Upon this point I see no reason to doubt, upon the case so far as it has been stated. Jones conveyed his farm in Hector, and received in exchange the Washington House property, of which he took possession; and these acts of his were based upon the stipulation of the McLallens to accept in satisfaction of their mortgage upon the estate the new securi-

ties to be given by the parties, and those securities were created with especial reference to the use to be made of them. The mortgage of the McLallens was all due, and therefore could at any time be enforced against the property. The mortgage of $3,000 which Jones took from Markham on the Hector farm was payable in one, two and three years, and the one which he gave to Markham of $1,000 was payable in two years. These time securities were to be taken by the McLallens in satisfaction of their debt, already mature; and it is quite easy to see that the entire dealing was dependent on that stipulation. In the absence of such a stipulation, it cannot be supposed that Jones would, in exchange for his farm, accept the Washington House with this incumbrance upon it presently due, while the counter security which he received from Markham was payable at distant periods. The dealing was upon a different principle. The Washington House was incumbered by this mortgage of $3,800 which Markham had created. Of this, he was to pay $3,000 by his bond and mortgage upon time, which the plaintiffs were to accept as so much towards a satisfaction, to be completed by another bond and mortgage of $1,000, which Jones himself was to give. The whole transaction was indivisible, and there is no reason for saying that any part of it would have been agreed to without the residue. I have no hesitation, therefore, in saying that the agreement on the part of the McLallens was one to be specifically enforced after the contract had been, in all other respects, carried into execution.

It further appears that, on the 5th of December, 1853, being some three months after the transactions which have been so far stated, William Jones, Jr., being in possession of the Washington House under the conveyance from Markham, executed a mortgage thereon for $1,400 to David Jones, the plaintiff in the cross-suit and the appellant in this court. At this time the parties were in the situation already mentioned, no actual substitution of the new securities for the $3,800 mortgage having been made. Those securities yet remained in the hands of William Jones, Jr., and immediately after giving the mortgage to David Jones he absconded and took them away with

him. They have never been delivered over to the McLallens, and it does not appear where they now are, nor what has become of William Jones, Jr. He seems to have been made a party to these suits by advertisement according to the statute, and he has not appeared in either of the actions. Soon after the disappearance of Jones, attachments were taken out against him by the defendants Strobridge and others who were his creditors, under which they claim to have acquired a lien on the bond and mortgage of $3,000 given by Markham to Jones on the farm in Hector, being one of those which the McLallens were to accept in satisfaction of their mortgage of $3,800 on the Washington House. The situation and rights of David Jones and of the attaching creditors arising out of these additional facts, are next to be considered.

It has been shown that when the mortgages of $3,000 and $1,000 were left with William Jones, Jr., he had a right to compel the McLallens to accept them in satisfaction of their own mortgage upon the Washington House. This right was not lost by any intervening delay when he gave the mortgage of $1,400 to David Jones. Neither of the parties to the proposed substitution regarded time as important, and neither was in default in that respect. By the consent of both, the matter was left for consummation at any convenient time. It was open when David Jones took his mortgage. By that mortgage he became clothed with the same right to require a satisfaction of the prior incumbrance that his mortgagor possessed. The owner of an estate on which there is an incumbrance, having a right to demand the specific enforcement of an agreement to satisfy that incumbrance, when he sells or mortgages the estate, clothes his grantee or mortgagee with the same right. That a mortgagee has the same rights in this respect as a grantee will be evident when we consider that he may acquire the title through a foreclosure of his mortgage and a sale of the estate. But the Messrs. McLallen cannot be required to perform their agreement and to relinquish their incumbrance on the Washington House without receiving as one of the substituted securities the mortgage of $3,000 on the Hector farm, which the

creditors of William Jones, Jr., have attached. If these creditors by their attachment can deprive the McLallens of that security, they can defeat the specific performance of the agreement. But this they cannot do. The security which they have seized was created for the very purpose of being applied to the satisfaction of the McLallens' mortgage; and David Jones by his mortgage acquired the right of insisting upon that application, in other words upon a performance of the agreement, before the attachments were issued. It follows that these creditors acquired, by their proceeding, no rights as against David Jones.

It seems, from this discussion, to be a necessary conclusion that the case was determined by the referee upon an erroneous principle. Conceding that David Jones, through his mortgage, acquired the same right to insist upon a specific performance which William Jones, Jr., possessed, he considered it a fatal objection that the latter had suffered the mortgage of $3,000 to be encumbered by the liens of the attaching creditors, so that the substitution could not be carried into effect. These creditors were parties to the suits, and, as we have seen, they had acquired no rights which ought to stand in the way of such a decision of the controversy as the relations of the remaining parties to each other properly demand.

We think there should be a new trial; but, in order that our decision may not be understood in too broad a sense, some additional observations seem to be necessary. Before the McLallens can be compelled to give up their mortgage, something further ought to appear which has not been found by the referee one way or the other. The right of William Jones, Jr., to demand a specific performance of the agreement to substitute the new securities was subject, of course, to the condition of performance on his part; and David Jones took his situation and rights subject to the same condition. The latter gained no better position than his mortgagor occupied; and before he can claim that the mortgage in question shall be surrendered and canceled, he must show that the securities to be substi tuted are in his power or in that of his mortgagor, and that a

good title to them can be transferred. The claims of the attaching creditors are, as we have seen, of no importance to the question. But William Jones, Jr., absconded with the securities in possession; and the statement of the referee does not show whether possession and a good title to them can now be given to the McLallens. Although the claim of an attaching creditor must yield to the prior and superior equities of other parties, that of a purchaser from William Jones, Jr., in good faith and for value, may deserve a very different consideration. In the referee's statement of facts and conclusions, there is no suggestion of any hostile claim except that of the creditors, nor of any present difficulty, other than that, in the way of a specific performance; nor has any suggestion of that nature been made in the argument before us. We grant a new trial, because we think the controversy has not been determined upon a full and accurate consideration of the principles which it involves, and because erroneous reasons have been assigned for the decision. But, on a reëxamination of the case, it must be ascertained and determined that the McLallens can have a perfect title to and the control of the securities which they agreed to accept, before they can be compelled to cancel the one they now hold. Time, as we have already said, is not material, but it must appear, when the trial and decision are had, that the agreement in question can be performed on both sides.

It is to be noticed, also, that none of the parties are claiming a specific performance of the agreement except the appellant David Jones, and his interest in the question is only commensurate with the amount of his mortgage. That interest being protected, I see no reason why the other parties should not be left in the situation where they now are. In that disposition of the case, the rights of the various persons before the court should, I think, be adjusted as follows: The Washington House property should be sold under the judgment to be rendered, and the proceeds disposed of thus: 1. To pay the McLallens the $1,000 secured by the mortgage given by William Jones, Jr., to Markham; 2. To pay the appellant's mortgage; 3. The

residue to be applied on the debt of the McLallens. For the further sum required to pay that debt, not exceeding, however, the amount of the appellant's mortgage, the McLallens should be adjudged to have the first interest in the mortgage of $3,000 upon the Hector farm, and the residue of that mortgage will be subject to the claims of the attaching creditors.

GROVER, J., dissented, and was for affirmance; SELDEN and GRAY, Js., expressed no opinion.

Judgment reversed, and new trial ordered.